UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No.   8:22-cv-02290-MWC-JDE                                     Date: February 14, 2025

Title   Jim Gramstad *et al.* v. Ventura Foods, LLC

Present: The Honorable:   Michelle Williams Court, United States District Judge

| D. Carr | CourtSmart |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| James Clark | Howard Shapiro |

**Proceedings:  (In Chambers) Order GRANTING Plaintiffs' unopposed motion for final approval of class action settlement (Dkt. # 61)**

Before the Court is the unopposed motion by Plaintiffs Jim Gramstad and Aisan Rouhaninia Athari, individually and as representatives of a Putative Class of Participants and Beneficiaries, on behalf of all similarly situated participants and beneficiaries of the Ventura Foods, LLC Profit Sharing 401(k) Plan (the "Plan") (collectively, "Plaintiffs"), for Final Approval of Class Action Settlement.  Dkt. # 61-1 ("*Mot.*").  Having considered the moving papers, as well as the arguments at the hearing on February 14, 2025, the Court **GRANTS** the motion.

I.   Background

   A.   Factual and Procedural History

Plaintiffs commenced this action in December 2022.  Dkt. # 1.  Plaintiffs brought this action under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001 *et seq.*, on behalf of the Plan against Defendants Ventura Foods, LLC and Does 1 through 10 (collectively, "Defendants").[1]  *Id.*

---

[1]  The Settlement defines "Defendants" as "Ventura Foods, LLC, the Plan's fiduciaries (*de jure* or *de facto*) whether they are made defendants as 'Does 1 through 10,' the Committee, and includes all persons and entities defined as Released Parties."  Dkt. # 49-1; Dkt # 49-2, Ex. 1 ("*Settlement Agreement*") § 1.18.  It defines "Committee" as "the Ventura Foods, LLC 401(k) Plan Committee or any predecessor or successor Plan Committee that has or had any fiduciary or administrative responsibility for

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.   8:22-cv-02290-MWC-JDE                                         Date: February 14, 2025

Title       Jim Gramstad *et al.* v. Ventura Foods, LLC

In April 2023, Plaintiffs filed the operative amended complaint ("FAC").  Dkt. # 23 ("*FAC*").  Plaintiffs are current and former employees, participants, and beneficiaries of the Plan.  *Id.* ¶ 1.  Plaintiffs assert that Defendants breached their fiduciary duties of prudence and loyalty to the Plan.  *Id.* ¶ 6.  Plaintiffs assert the following two claims for relief:  (1) breach of fiduciary duty of prudence, and (2) breach of fiduciary duties in violation of duty to investigate and monitor investments and covered service providers.  *See generally id.*

In October 2023, the parties scheduled a mediation with Robert A. Meyer of JAMS for January 17, 2024.  Dkt. # 49-2 ("*Humphrey Decl. iso Prelim. App.*") ¶ 16.  Following their mediation, the parties reached a settlement (the "Settlement").  *Id.* ¶ 16.

   B.   Preliminary Approval and Class Notice

In April 2024, the parties moved for preliminary settlement approval after finalizing a long form settlement agreement ("Settlement Agreement").  Dkt. # 49-1; *Settlement Agreement*.  On September 24, 2024, the Court entered a preliminary approval order ("PAO"), which initially approved the Settlement Agreement.  Dkt. # 57 ("*PAO*").

In compliance with the PAO, ILYM Group disseminated the settlement notice ("Notice") via electronic and first-class mail to 8,979 Class Members.[2]  Dkt. # 61-4 ("*Snow Decl. I*") ¶ 8.  Of the 8,979 Notices mailed, 737 were returned as undeliverable.  Dkt. # 66-1 ("*Snow Decl. II*") ¶ 3.  ILYM Group was able to obtain updated addresses through "skip-tracing" for 570 addresses.  *Id.*  ILYM Group re-mailed Notices to the individuals for whom an updated address was discovered after the original Notice had been returned.  *Id.*  ILYM Group deemed a total of 211 Notice packets as undeliverable, meaning only a de minimis 2.3% of the Class Members did not receive mailed Notices.  *Id.* ¶ 5.  ILYM Group also established a website, VenturaFoodsERISASettlement.com,

---

administering the Plan, selecting and monitoring recordkeepers, and selecting and monitoring the Plan's investments and investment fees."  *Id.* § 1.15.

[2]  "Class Members" means all individuals in the "Settlement Class," including the Class Representatives.  *Settlement Agreement* § 1.10. "Settlement Class" is defined as:  "All current and former participants and beneficiaries of the Plan at any time during the period from October 1, 2016 to March 31, 2024 (the 'Class Period')."  *PAO* at 11; *see Humphrey Decl. iso Prelim. App.* ¶ 11; *Settlement Agreement*.  The Court has preliminarily certified the Settlement Class, for settlement purposes only.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.   8:22-cv-02290-MWC-JDE                                               Date: February 14, 2025

Title   Jim Gramstad *et al.* v. Ventura Foods, LLC

for the Settlement pursuant to the terms of the Settlement, which provided information about the case and relevant deadlines, and supplied several pertinent documents. *Snow Decl. I* ¶ 7. Additionally, in accordance with the Settlement Agreement and the PAO, ILYM Group established a toll-free telephone number, to which Class Members could direct questions about the Settlement. *Id.* ILYM Group did not receive any objections to the fairness, reasonableness, or adequacy of the Settlement. *Snow Decl. II* ¶ 6.

      C.      Overview of Final Settlement Agreement

The Settlement Agreement resolves claims between Defendants and the Settlement Class. In exchange for the "Released Claims" as defined in Section 1.37 of the Settlement Agreement, Defendants agrees to pay a gross settlement amount of $1,500,000 ("Gross Settlement Amount"). *Settlement Agreement.* § 1.26.  . After deducting from the Gross Settlement Amount (a) all attorneys' fees and costs paid to Class Counsel as authorized by the Court; (b) all case contribution awards as authorized by the Court; (c) all administrative expenses; and (d) a contingency reserve not to exceed an amount to be mutually agreed upon by the settling parties that is set aside by the settlement administrator for: (1) administrative expenses incurred before the settlement effective date but not yet paid; (2) administrative expenses estimated to be incurred after the settlement effective date; and (3) an amount estimated for adjustments of data or calculation errors, if any, the remainder (known as the "Net Settlement Amount") will be distributed to the Class Members in accordance with the plan of allocation. *Id.* § 1.29; *Mot.* 2:19–3:6.

      D.      Independent Fiduciary Review of the Settlement Agreement

Fiduciary Counselors conduced an independent comprehensive review of the settlement. Dkt. # 66, Ex. 1 ("*FC Report*"). Fiduciary Counselors (i) authorized the Settlement in accordance with PTE 2003-39; (ii) approved a release in its capacity as a fiduciary of the Plan, for and on behalf of the Plan; and (iii) did not object to any aspect of the Settlement. *See id.*

II.      Final Settlement Approval

A court may finally approve a class action settlement "only after a hearing and only on finding that [the settlement] . . . is fair, reasonable and adequate." Fed. R. Civ. P. 23(e)(2). Approval or rejection of a settlement agreement is committed to the district

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.   8:22-cv-02290-MWC-JDE                                                  Date: February 14, 2025

Title   Jim Gramstad *et al.* v. Ventura Foods, LLC

court's sound discretion.  *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998), *overruled on other grounds by Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011).

> In determining whether a settlement is fair, reasonable, and adequate, the court must balance a number of factors: [1] the strength of the plaintiffs' case; [2] the risk, expense, complexity and likely duration of further litigation; [3] the risk of maintaining class action status throughout the trial; [4] the amount offered in settlement; [5] the extent of discovery completed and the stage of proceedings; [6] the experience and views of counsel; [7] the presence of a government participant; and [8] the reaction of the class members to the proposed settlement.

*Id.*; *see also Kim v. Allison*, 8 F.4th 1170, 1178 (9th Cir. 2021); *Staton v. Boeing Co.*, 327 F.3d 938, 959 (9th Cir. 2003); *Officers for Justice v. Civil Serv. Comm'n of S.F.*, 688 F.2d 615, 625 (9th Cir. 1982) (noting that the list of factors is "by no means an exhaustive list").  Additionally, under Rule 23(e), the Court must "scrutinize the fee arrangement for potential collusion of unfairness to the class" by analyzing three factors: (1) whether counsel "receive[d] a disproportionate distribution of the settlement;" (2) whether the parties agreed to a "clear sailing arrangement;" and (3) whether the settlement includes a "kicker" or "reverter" clause.  *See Briseño v. Henderson*, 998 F.3d 1014, 1023, 1026 (9th Cir. 2021).

The district court must approve or reject the settlement—as a whole—after comprehensively exploring all factors.  *See Hanlon*, 150 F.3d at 1026 ("It is the settlement taken as a whole, rather than the individual component parts, that must be examined for overall fairness.").  The court may not delete, modify, or rewrite provisions of the settlement.  *See id.*  A court should be cognizant that a settlement "is the offspring of compromise; the question . . . is not whether the final product could be prettier, smarter or snazzier, but whether it is fair, adequate and free from collusion." *Id.*  at 1027.  In determining whether a proposed settlement should be approved, the Ninth Circuit has a "strong judicial policy that favors settlement, particularly where complex class action litigation is concerned." *Class Plaintiffs v. Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.   8:22-cv-02290-MWC-JDE                                              Date: February 14, 2025

Title   Jim Gramstad *et al.* v. Ventura Foods, LLC

  A.  <u>*Hanlon*</u> Factors

    i. *Strength of Plaintiffs' Case and the Risk, Expense, Complexity, and Likely Duration of Further Litigation and Class Certification*

  "The first and second [*Hanlon*] factors require the Court to consider the strength of the Plaintiffs' case on the merits balanced against the amount offered in the settlement and the risks of further litigation." *Foster v. Adams & Assocs., Inc.*, No. 18-CV-02723-JSC, 2022 WL 425559, at *4 (N.D. Cal. Feb. 11, 2022) (quotations and citation omitted). The Court considers the risk of continuing litigation, including the strengths and weaknesses of Plaintiffs' case on the merits, balanced against the certainty and immediacy of recovery from the Settlement Agreement. *See In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 458 (9th Cir. 2000). There is no "particular formula by which th[e] outcome must be tested." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009). Rather, the court's assessment of the likelihood of success is "nothing more than an amalgam of delicate balancing, gross approximations and rough justice." *Id.* at 965 (internal quotation marks and citation omitted). "In reality, parties, counsel, mediators, and district judges naturally arrive at a reasonable range for settlement by considering the likelihood of a plaintiffs' or defense verdict, the potential recovery, and the chances of obtaining it, discounted to a present value." *Id.* "In most situations, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004) (quotation marks and citation omitted).

  Though Plaintiffs survived Defendants' motion to dismiss, "ERISA actions are notoriously complex cases, and ESOP cases are often cited as the most complex of ERISA cases." *Pfeifer v. Wawa, Inc.*, No. CV 16-497, 2018 WL 4203880, at *7 (E.D. Pa. Aug. 31, 2018) (quotation marks and citations omitted); *see also Hurtado v. Rainbow Disposal Co.*, No. 8:17-cv-01605-JLS-DFM, 2021 WL 79350, at *4 (C.D. Cal. Jan. 4, 2021) (citing *Pfeifer*); *Conkright v. Frommert*, 559 U.S. 506, 509 (2010) (noting that ERISA is an enormously complex statute, and many ERISA matters also involve facts that are exceedingly complicated). Indeed, Plaintiffs recognize the inherent risk that this litigation could result in a lesser recovery for the class, or no recovery at all. *See Mot.* 7:21–25 (citing *LaGarde v. Support.com, Inc.*, No. C 12–0609 JSC, 2013 WL 1283325, at *4 (N.D. Cal. Mar. 26, 2013)). Moreover, had the parties not settled, there was a likelihood that substantial continued litigation would be required, including class certification, discovery, substantive motion practice, and potential appeal. *See id.* 8:12–

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  8:22-cv-02290-MWC-JDE                                    Date: February 14, 2025

Title       Jim Gramstad *et al.* v. Ventura Foods, LLC

13; *In re LinkedIn ERISA Litig.* ("*LinkedIn*"), No. 5:20-CV-05704-EJD, 2023 WL 8631678, at *6 (N.D. Cal. Dec. 13, 2023) (finding that the first and second *Hanon* factors favored final approval where plaintiffs were likely to file additional dispositive, expert exclusion, and other pretrial motions, culminating with a trial and potential appeal).

Considering the risks and costs of continued litigation, the immediate reward to the Settlement Class is preferable. *See Rodriguez*, 563 F.3d at 966 (risks in litigating weigh in favor of approving a class settlement); *Catala v. Resurgent Capital Servs. L.P.*, No. 08C-V-2401 NLS, 2010 WL 2524158, at *3 (S.D. Cal. Jun. 22, 2010) ("In most situations, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results."). Accordingly, the Court finds that the first and second *Hanon* factors weigh in favor of approval.

    ii.  *Risk of Maintaining Class Action Status Through Trial*

Because the Class has only been certified for settlement purposes, the risk of maintaining class action throughout trial is not necessarily relevant here. *See In re Biolase, Inc. Sec. Litig.*, No. SACV 13-1300-JLS-FFMX, 2015 WL 12697736, at *7 (C.D. Cal. Jun. 5, 2015) (not considering this factor where no specific risks to maintaining class action status throughout the litigation were apparent). Regardless, even if Plaintiffs were to prevail in any certification motion, the Court cannot preclude the risk of decertification. Thus, the Settlement Agreement avoids these risks to the benefit of the Settlement Class. *LinkedIn*, 2023 WL 8631678, at *6. Accordingly, this factor also supports final approval.

    iii.  *Amount Offered in Settlement*

The fourth factor in assessing the fairness of the proposed settlement is the amount of the settlement. "[T]he very essence of a settlement is compromise, a yielding of absolutes and an abandoning of highest hopes." *Officers for Justice*, 688 F.2d at 624 (internal quotations omitted). The Ninth Circuit has explained that "the proposed settlement is not to be judged against a hypothetical or speculative measure of what might have been achieved by negotiators." *Id.* at 625. "Rather, the settlement amount must account for the risks of further litigation and trial, as well as expenses and delays associated with continued litigation." *Contreras v. Armstrong Flooring, Inc.*, No. CV 20-3087 PSG (SKx), 2021 WL 4352299, at *5 (C.D. Cal. Jul. 6, 2021).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.   8:22-cv-02290-MWC-JDE                                                   Date: February 14, 2025

Title   Jim Gramstad *et al.* v. Ventura Foods, LLC

      Here, Defendants agree to pay a Gross Settlement Amount of $1,500,000, *Settlement* ¶¶ 10, 30–31, with a net amount of approximately $793,500 to go to Class Members, *Snow Decl. I* ¶ 14.  The Gross Settlement Amount equals roughly 17%[3] of Plaintiffs' estimated damages for the class.  *Mot. 9:21–24.*  This percentage is well within the range for final approval.  *See In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d at 459 (9th Cir. 2000) (holding 16% recovery fair and adequate in a securities class action); *Destefano v. Zynga, Inc.*, No. 12-cv-04007- JSC, 2016 WL 537946, at *11 (N.D. Cal. Feb. 11, 2016) (approving class settlement providing settlement fund of "14 percent of likely recoverable aggregate damages at trial," and "9.5 percent of those" damages after "deductions for attorneys' fees and costs and administration costs").

      Weighing the clear risks of ongoing litigation against the recovery the Settlement Agreement provides for the Settlement Class, the amount offered in the Settlement is reasonable.  *See Catala*, 2010 WL 2524158, at *3; *Aarons v. BMW of N. Am., LLC*, No. CV 11-7667 PSG (CWx), 2014 WL 4090564, at *12 (C.D. Cal. Apr. 29, 2014) (noting that while settlements will not make most class members completely whole, class members must "discount their claims to obtain a certain and timely recovery, rather than bear the significant risk and delay associated with further litigation").  Accordingly, this factor favors final approval.

                iv.    *Extent of Discovery Completed and State of the Proceedings*

      This factor requires the Court to gauge whether Plaintiffs had sufficient information to make an informed decision about the merits of their case.  *See In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d at 459.  The more discovery that has been completed, the more likely it is that the parties have "a clear view of the strengths and weaknesses of their cases," and the more heavily this factor weighs in favor of final approval.  *Young v. Polo Retail, LLC*, No. C 02-4546 VRW, 2007 WL 951821, at *4 (N.D. Cal. Mar. 28, 2007) (internal quotation marks omitted).

---

[3]  Fiduciary Counselors note that Class Counsel's "filings mistakenly said the total estimated damages were approximately $9,200,000 and the recovery was 16% of the total estimated damages.  Class Counsel have informed us that the estimated damages for each group of claims were correct, so the correct estimate for total damages is $8,607,264.30."  *FC Report* at 8 n.3.  Thus, the recovery was around 17%.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.   8:22-cv-02290-MWC-JDE                                         Date: February 14, 2025

Title      Jim Gramstad *et al.* v. Ventura Foods, LLC

Here, extensive informal discovery and pre-litigation investigation was completed as the parties exchanged a great deal of documents. *Mot.* 12:19–26. The parties also engaged in motion practice, and met with the mediator, before reaching the Settlement Agreement. *Id.*; *see Cabiness v. Educ. Fin. Solutions, LLC*, No. 16- cv-01109-JST, 2019 WL 1369929, at *5 (N.D. Cal. Mar. 26, 2019) (finding "the extent of discovery completed supports approval of a proposed settlement, especially when litigation has 'proceeded to a point at which both plaintiffs and defendants ha[ve] a clear view of the strengths and weaknesses of their cases'"); *Acosta v. Frito- Lay, Inc.*, No.15-cv-02128-JSC, 2018 WL 2088278, at *9 (N.D. Cal. May 4, 2018) (finding this factor favored approval of a settlement when the parties "participated in several rounds of discovery production and two rounds of mediation"). Accordingly, the Court is confident that Plaintiffs had enough information to make an informed decision about the settlement after arm's-length negotiation and mediation based on the strengths and weaknesses of the case. *See Glass v. UBS Fin. Servs.*, No. C 06-4068 MMC, 2007 WL 221862, at *4–5 (N.D. Cal. Jan. 26, 2007) (reasoning that the parties' having undertaken informal discovery prior to settling supports approving the class action settlement). As such, this factor weighs in favor of granting final approval.

            v.       *Experience and Views of Counsel*

"Parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation." *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995). While counsel's views are instructive, they do not entitle the plaintiff to a presumption of fairness. *See Roes, 1–2 v. SFBSC Mgmt., LLC*, 944 F.3d 1035, 1049 (9th Cir. 2019).

Here, Settlement Class Counsel has considerable experience handling class action cases. *See Humphrey Decl. iso Prelim. App.* ¶¶ 3–7. The Court is satisfied that this experience has allowed Settlement Class Counsel to evaluate the merits of the claims and risks associated with prosecuting the case through trial and appeal. *See Cabiness*, 2019 WL 1369929, at *6 ("Class Counsel have extensive experience litigating class action and consumer protection cases. That they advocate in favor of the settlement weighs in favor of approval."); *see also Acosta*, 2018 WL 2088278, at *9 (giving value to opinion of counsel who had been named class counsel in 23 class actions). The Court accordingly credits Class Counsel's determination that the settlement is fair and reasonable, *Humphrey Decl. iso Prelim. App.* ¶ 21, and finds that this factor weighs in favor of final approval.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.   8:22-cv-02290-MWC-JDE                                             Date: February 14, 2025

Title       Jim Gramstad *et al.* v. Ventura Foods, LLC

       *vi.*    *Presence of a Government Participant*

Because there is no government entity directly participating in the case, this factor is not relevant to the analysis.

       *vii.*    *Class Members' Reaction to the Proposed Settlement*

In evaluating the fairness, adequacy, and reasonableness of settlement, courts also consider the reaction of the class to the settlement. *See Molski v. Gleich*, 318 F.3d 937, 953 (9th Cir. 2003), *overruled on other grounds by Dukes v. Wal-Mart Stores, Inc.*, 603 F.3d 571 (9th Cir. 2010); *DIRECTTV, Inc.*, 221 F.R.D. at 528–29 ("It is established that the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class action settlement are favorable to the class members."); *see also Arnold v. Fitflop USA, LLC*, No. CV 11-0973 W (KSC), 2014 WL 1670133, at *8 (S.D. Cal. Apr. 28, 2014) (concluding that the reaction to the settlement "presents the most compelling argument favoring settlement").

Here, notices were sent to all 8,979 Class Members via U.S. mail and e-mail on November 5, 2024. *Snow Decl. I* ¶ 8. Not a single Class Member objected to the Settlement Agreement, which clearly supports final approval. *Snow Decl. II* ¶ 6; *see Chun-Hoon v. McKee Foods Corp.*, 716 F. Supp. 2d 848, 852 (N.D. Cal. 2010) (finding that the absence of a negative reaction certainly weighs in favor of approval). The Court finds that this positive reaction weighs in favor of final approval.

       *viii.*    *Balancing the Hanlon Factors*

Having considered all of the *Hanlon* factors, the Court finds that all relevant factors favor final approval.

    B.    *Briseño* Factors

In *Briseño*, the Ninth Circuit stressed that, before approving class action settlements, district courts must look for signs that class counsel has pursued their own self-interests in the negotiations. *See* 998 F.3d at 1023. The court identified three "red flags" that are indicative of collusion between class counsel and the defendant: (1) if class counsel receives a disproportionate distribution of the gross settlement amount; (2)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.    8:22-cv-02290-MWC-JDE                                            Date: February 14, 2025

Title    Jim Gramstad *et al.* v. Ventura Foods, LLC

if there is a "clear-sailing" agreement; and (3) if any of the gross settlement amount reverts to the defendant.  *See id.*  The Court discusses each "red flag" in turn.

       *i.*    *Disproportionate Distribution of the Settlement*

    One sign that class counsel pursued their own self-interests over those of the class is if class counsel receives a disproportionate distribution of the common settlement fund. *See id.* at 1023.  For example, in *Briseño*, the Circuit found that class counsel's receipt of $5.85 million of the $8 million gross settlement fund raised red flags, particularly because the class received less than $1 million.  *See id.* at 1020.

    Here, Class Counsel seeks $500,000 or 33.3% of the Gross Settlement Amount, which is the benchmark amount in class action settlements.  *See Mot.* 3:21–23.  After examining the attorneys' fees Plaintiff seeks compared to the number of hours worked and the stated hourly fee, the Court is not concerned about collusion based on Class Counsel's fee request.  The Court discusses this issue further when analyzing Plaintiffs' approval request for attorneys' fees.  Because Class Counsel did not receive a disproportionate distribution of the Gross Settlement, this factor does not raise a red flag regarding the Settlement Agreement.

       *ii.*    *Presence of a "Clear-Sailing Arrangement"*

    A settlement agreement contains a "clear-sailing arrangement" when "the defendant agrees not to challenge a request for an agreed-upon attorney's fee." *Briseño*, 998 F.3d at 1023.  But the mere presence of such an agreement is not "an independent basis for withholding settlement approval." *Id.* at 1027.  Instead, such arrangements are material only if there is evidence of at least one of the other two *Briseño* factors—reverters and unreasonably high attorneys' fees.  *See McKinney-Drobnis v. Oreshack*, 16 F.4th 594, 610 (9th Cir. 2021) ("[A] clear sailing provision signals the potential that a defendant agreed to pay class counsel excessive fees in exchange for counsel accepting a lower amount for the class members." (citation omitted)).

    Although the Settlement Agreement contains a clear sailing arrangement, *see Settlement Agreement* § 6.4, any potential for collusion that could come from the arrangement is offset because neither the attorneys' fees are excessively high nor does the Settlement Agreement contain a reverter clause.  Thus, this factor only weakly indicates collusion or inappropriate self-interest.  *See Briseño*, 998 F.3d at 1027.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.   8:22-cv-02290-MWC-JDE                                  Date: February 14, 2025

Title      Jim Gramstad *et al.* v. Ventura Foods, LLC

         iii.     *Presence of a Reversionary Clause*

A reversionary clause is one that "returns unawarded fees to the defendant, rather than the class." *Id.* at 1023. Here, there is no reversionary clause in the Settlement Agreement. *Settlement* ¶ 15. Accordingly, this factor does not indicate collusion.

         iv.     *Briseño Conclusion*

Having considered each of the *Briseño* factors, the Court finds that the Settlement Agreement, on balance, was not collusive or based on inappropriate self-interest of Class Counsel.

    C.     <u>Final Approval Conclusion</u>

Having concluded that the *Hanlon* factors favor final approval, and that the Settlement Agreement is appropriate under *Briseño*, the Court **GRANTS** Plaintiff's motion for final approval of the Settlement Agreement.

III.     <u>Attorneys' Fees, Costs and Incentive Awards</u>

Plaintiff moves for (1) attorneys' fees in the amount of $500,000 (33.3% of the Gross Settlement Amount), (2) reimbursement of costs in the amount of $75,000, and (3) a $7,5000 enhancement award to each of the Plaintiffs. *See Mot.* 14:6–19:18; Dkt. # 61-2 ("*Humphrey Decl. iso Mot.*") ¶ 7; Dkt. # 61-3 ("*Clark Decl. iso Mot.*"). The Court addresses each request in turn.

Rule 23 permits a court to award "reasonable attorneys' fees . . . that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). The court "must carefully assess" the reasonableness of the fee award. *See Staton*, 327 F.3d at 963; *see also Browne v. Am. Honda Motor Co., Inc.*, No. CV 09-6750 MMM (DTB), 2010 WL 9499073, at *3–5 (C.D. Cal. Oct. 5, 2010) (explaining that in a class action case, the court must scrutinize a request for fees when the defendant has agreed to not oppose a certain fee request as part of a settlement). Courts can determine the reasonableness of a request for attorneys' fees using either the lodestar method or the percentage-of-recovery method. *See Allison*, 8 F.4th at 1180. "Though courts have discretion to choose which calculation method they use, their discretion must be exercised as to achieve a reasonable result," and the Ninth Circuit recommends "cross-checking their calculations against a

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | |
|---|---|
| Case No. 8:22-cv-02290-MWC-JDE | Date: February 14, 2025 |
| Title Jim Gramstad *et al.* v. Ventura Foods, LLC | |

second method." *See In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 944–45 (9th Cir. 2011) (deciding courts may use either method to gauge reasonableness while recommending courts cross-check their calculations against a second method).

The Court first analyzes the reasonableness of the request under the percentage-of-recovery method and then cross-checks it against the lodestar method.

### i. Percentage-of-Recovery Method

Under the percentage-of-recovery method, courts typically use 25% of the fund as a benchmark for a reasonable fee award. *See id.* at 942. The percentage can vary, however, and courts have awarded more or less than 25% of the fund in attorneys' fees as they have deemed appropriate. *See, e.g.*, *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002) (noting that courts generally award between 20% and 30% of the common fund in attorneys' fees). When assessing reasonableness of fee awards under the percentage-of-recovery theory, courts consider the following factors: "(1) the results achieved; (2) the risk of litigation; (3) the skill required and the quality of work; (4) the contingent nature of the fee and the financial burden carried by the plaintiffs; and (5) awards made in similar cases." *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1046 (N.D. Cal. 2008) (citing *Vizcaino*, 290 F.3d at 1048–50).

### a. Results Achieved

"The overall result and benefit to the class from the litigation is the most critical factor in granting a fee award." *In re Omnivision Techs.*, 559 F. Supp. 2d at 1046. As discussed in Section II(A)(iii), the Gross Settlement Amount equals roughly 17% of Plaintiffs' estimated damages for the class, which is well within the range for final approval. Further, the parties reached this result after engaging in adversarial and arm's-length mediation. In light of the risks of continued litigation, this result achieved on behalf of the class members supports the requested fees.

### b. Risk of Litigation

The risk that further litigation might result in no recovery is a "significant factor" in assessing the fairness and reasonableness of an award of attorneys' fees. *In re Omnivision Techs.*, 559 F. Supp. 2d at 1046–47; *see also Vizcaino*, 290 F.3d at 1048 (discussing that "[r]isk is a relevant circumstance" in determining an attorney fee award

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.   8:22-cv-02290-MWC-JDE                                             Date: February 14, 2025

Title   Jim Gramstad *et al.* v. Ventura Foods, LLC

in a common fund case). As the Court noted, Plaintiffs—and by extension Class Counsel—would have faced substantial obstacles were they to have to continue litigating this matter. *See supra* § III (A) (ii), (iv). In light of the risks associated with this litigation, the result achieved for the Settlement Class supports the requested fees.

        c.        *Skills Required and Quality of Work*

The Court also considers the skills required to prosecute and manage this litigation, as well as Class Counsel's overall performance. *See In re Omnivision Techs.*, 559 F. Supp. 2d at 1047. Here, Class Counsel, who has considerable experience in litigating class actions, engaged in extensive informal discovery, motion practice, and mediation, which also weighs in favor of approving the requested fees. *See supra* § III (A)(iv)–(v).

        d.        *Contingent Nature and Plaintiff's Financial Burden*

Class Counsel has spent over two years litigating this case, which they took on a contingency fee basis. *Humphrey Decl. iso Mot.* ¶ 9. Since Class Counsel faced the risk of walking away with nothing, the Court finds that this factor supports approving the requested fees.

        e.        *Awards Made in Similar Cases*

Class Counsel seeks an award higher than the benchmark for reasonable attorneys' fees under the percentage-of-recovery approach. However, an attorney fee of one third of the settlement fund is routinely found to be reasonable in class actions. *See, e.g.*, *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d at 463; *In re Pacific Enters. Sec. Litig.*, 47 F.3d 373, 379 (9th Cir. 1995) (one-third fee from a $12 million common fund). Indeed, "a 33.3% recovery is on par with settlements in other complex ERISA class actions." *Foster*, 2022 WL 425559, at *10 (collecting cases); *see also Aquino v. 99 Cents Only Stores LLC*, No. 2:22-cv-01966-SPG-AFM, 2024 U.S. Dist. LEXIS 6950, *30 (C.D. Cal. Jan. 2, 2024) (awarding the same in a similar ERISA action). Accordingly, this factor also supports approving the requested fees.

        f.        *Conclusion*

The Court finds that Class Counsel's request is reasonable.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.   8:22-cv-02290-MWC-JDE                                                   Date: February 14, 2025

Title   Jim Gramstad *et al.* v. Ventura Foods, LLC

        *ii.*      *Lodestar Method Cross-Check*

"The lodestar method is a way for the Court to cross-check the reasonableness of a fee award." *Gutierrez v. Amplify Energy Corp.*, No. 8:21-CV-01628-DOC(JDEx), 2023 WL 6370233, at *6 (C.D. Cal. Sept. 14, 2023); *see Vizcaino*, 290 F.3d at 1050 ("Calculation of the lodestar, which measures the lawyers' investment of time in the litigation, provides a check on the reasonableness of the percentage award."). "The lodestar figure is calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation (as supported by adequate documentation) by a reasonable hourly rate for the region and for the experience of the lawyer." *In re Bluetooth*, 654 F.3d at 941. In cases where attorney investment of time was "minimal," the lodestar analysis "may convince a court that a lower percentage is reasonable." *Vizcaino*, 290 F.3d at 1050. On the other hand, when the "litigation has been protracted," lodestar may suggest "a higher percentage." *Id.*

The Court has reviewed the timekeeping charts Class Counsel provided, which list each attorney's name, title, number of hours worked on this litigation, and hourly rate. *See Humphrey Decl. iso Mot.; Clark Decl. iso Mot.* Class Counsel asserts that the lodestar is $207,845.50 based on the 293.72 hours that Christina Humphrey Law, P.C. spent on this case, and $77,250.00 based on the 103 hours that Tower Legal Group, P.C. spent on this case. *See id.* Christina Humphrey Law, P.C. lists hourly rates at $950.00 for partners, $700 for associates, and $215 for paralegals. *Humphrey Decl. iso Mot.* ¶ 7. Tower Legal Group, P.C. billed at $750 per hour, where each attorney had thirteen years of experience—though whether they are considered a partner or associate is not clear. *Clark Decl. iso Mot.* ¶ 4.

In measuring "the reasonableness of these hourly rates in the Central District of California," the Court has found the 2024 Real Rate Report to be "a useful guidepost." *See Rolex Watch USA Inc. v. Zeotec Diamonds Inc.*, No. CV 02-1089 PSG (VBKx), 2021 WL 4786889, at *3 (C.D. Cal. Aug. 24, 2021) (collecting cases relying on the Real Rate Report). The Real Rate Report identifies attorney rates by location, experience, firm size, areas of expertise and industry, as well as specific practice areas, and is based on actual legal billing, matter information, and paid and processed invoices. *Id.* For litigation hourly rates in Los Angeles, the Real Rate Report documents a range of $548 (first quartile) to $1,268 (third quartile) for partners and $477 (first quartile) to $946 (third quartile) for associates. *See 2024 Real Rate Report* at 16. As to paralegals and other litigation support staff, the Real Rate Report provides a general median rate ($229), not a

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.   8:22-cv-02290-MWC-JDE                                                    Date: February 14, 2025

Title   Jim Gramstad *et al.* v. Ventura Foods, LLC

rate specific to Los Angeles.  *See id.* at 9.  Thus, Class Counsel's hourly rates fall within the Real Report.

Based on the hourly rates of each attorney, Class Counsel's total lodestar would calculate to $285,095.50.  *Mot.* 4:3–6.  In requesting $500,000, Class Counsel requests a multiplier of 1.75—which falls at the lower end of the Ninth Circuit's "presumptively acceptable range of 1.0–4.0."  *See Dyer v. Wells Fargo Bank, N.A.*, 303 F.R.D. 326, 334 (N.D. Cal. 2014) (citing *Vizcaino*, 290 F.3d at 1051 (upholding a 3.65 multiplier)); *Gutierrez*, 2023 WL 6370233, at *7 (referring to a multiplier of 2.23 as "modest").

The Court's lodestar cross-check further supports the granting of Class Counsel's requested attorneys' fees.

### B. Litigation Costs

"Attorneys may recover their reasonable expenses that would typically be billed to paying clients in non-contingency matters." *In re Omnivision*, 559 F. Supp. 2d at 1048 (citing *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994)).  Here, Class Counsel request reimbursement of expenses incurred in the amount of $75,000 for experts, filing fees, process service, research, mediation, travel, and postage. *Humphrey Decl. iso Mot.* ¶ 10; *Clark Decl. iso Mot.* ¶ 7.  The Court is satisfied that the costs amount is reasonable and necessary.  *In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166, 1177–78 (S.D. Cal. 2007) (granting costs for similar expenses).

### C. Incentive Award

"Incentive awards are fairly typical in class action cases." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958 (9th Cir. 2009).  "Courts have discretion to approve service awards based on the amount of time and effort spent, the duration of the litigation, and the personal benefit (or lack thereof as a result of the litigation)." *Gutierrez*, 2023 WL 6370233, at *8 (citing *Van Vranken v. Atlantic Richfield Co.*, 901 F. Supp. 294, 299 (N.D. Cal. 1995)).

Here, the highest gross settlement payment is estimated to be $6,742.40, with an average gross settlement payment of $88.37.  *Snow Decl. I* ¶ 15.  Plaintiffs Gramstad and Athari request incentive awards totaling $7,500 each. *Mot.* 15:3–4.  Plaintiff Gramstad has actively participated in this lawsuit, dedicating approximately 50 hours to this case.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES – GENERAL

Case No.   8:22-cv-02290-MWC-JDE                                                            Date: February 14, 2025

Title       Jim Gramstad *et al.* v. Ventura Foods, LLC

Dkt. # 61-5 ("*Gramstad Decl.*") ¶ 6.  Among other things, Plaintiff Gramstad produced documents, met with attorneys, supplied facts to aid the development of the case, talked to other employees, and prepared for mediation.  *Id.*  Similarly, Plaintiff Athari dedicated approximately 40 hours to this case, which included comparable tasks to Plaintiff Gramstad.  Dkt. # 61-5 ("*Athari Decl.*") ¶ 6.

After reviewing the submitted declarations and the approximate gross settlement payments, the Court is satisfied that the requested service awards are appropriate.  *See Aquino*, 2024 U.S. Dist. LEXIS 6950, *19 (awarding $7,500 to each named plaintiff for 20-50 hours spent on the litigation where the estimated highest gross settlement payment was $4,063.58 and the average gross settlement payment was $87.53).

IV.   Conclusion

For the foregoing reasons, the Court:
- **GRANTS** Plaintiffs' Unopposed Motion for Final Approval and approves settlement of the action between Plaintiffs and Defendants, as set forth in the Settlement Agreement, as fair, just, reasonable, and adequate and directs the parties to perform their settlement in accordance with the terms set forth in the Settlement Agreement;
- **GRANTS** an award to Class Counsel for $500,000 in attorneys' fees and $75,000 in costs;
- **GRANTS** an incentive award of $7,500 to each Class Representative; and
- Retains jurisdiction to enforce the Settlement Agreement and resolve any disputes that might arise during its term.

**IT IS SO ORDERED**

:

**Initials of Preparer**   DC